VAN SYCKLE *v.* THOMPSON.

COMPROMISE AND SETTLEMENT—FRAUD—EVIDENCE.

In a suit to vacate a compromise of complainant's interest in an estate of her grandfather, on the ground that she was defrauded or mistaken as to the value of the interest which she was entitled to, evidence that her solicitors had, previously to the compromise, advised her in relation to her rights, and the extent of decedent's estate, refuted her claim of ignorance and of fraud practiced by defendants.

Appeal from Macomb; Tappan, J. Submitted November 12, 1912. (Docket No. 95.) Decided July 9, 1913.

Bill by Hattie Bristol Van Syckle against William Thompson and another for the cancellation of a deed and contract of settlement. From a decree for defendants, complainant appeals. Affirmed.

*Stewart & Jacobs* and *John A. Weeks,* for complainant.

*Henry B. Graves,* for defendants.

MOORE, J.  In April, 1889, Joel Thompson died in the village of Romeo, Mich., leaving as heirs the complainant, a granddaughter, the defendant William Thompson and Noah Thompson, his sons, and his widow, Sarah R. Thompson.  The mother of complainant was a daughter of Joel Thompson, and died in August, 1880.  Joel Thompson executed to the complainant (then Hattie Bristol) a deed of lots 7 and 8 of Hartung's addition to said village of Romeo, which deed bears date December 22, 1884.  Joel Thompson on the 13th day of June, 1888, executed his last will bequeathing his entire estate to the defendant William Thompson, subject to the life use of the personal property in the widow, Sarah R. Thompson, and also subject to the care and support of Noah Thompson, brother of William Thompson.  At the time the deed to the complainant was executed the deed was placed with one J. L. Starkweather in escrow, to be delivered to her upon the death of her grandmother, Sarah R. Thompson.  The grandmother died July 17, 1904. The complainant was born in 1880.  After her grandmother's death, she was informed by the defendant that one J. L. Starkweather held the deed in question. On October 3, 1904, she, accompanied by her husband, went to the office of Mr. Starkweather in Romeo to secure the deed.  Mr. Starkweather read the deed to her, but did not deliver the same.  An effort was then made by Mr. Starkweather to obtain a quitclaim deed from the defendants to the complainant of any interest they might have in said property.  The deed to the complainant comprised the homestead of the said Joel and Sarah Thompson.  Through mistake this deed was not signed by Mrs. Thompson.  The defendant William Thompson, learning of this fact, denied the validity of the deed, and began proceedings to set the same aside, claiming title to the property therein described as the residuary legatee under the said will of his

father. Mr. Starkweather was employed in that litigation, and to carry it on, a mortgage was made on the Romeo property to one Chamberlain. Later Mr. Starkweather employed Canfield & Erskine to assist in the litigation. An answer was prepared and filed in the case by Mr. Canfield. Later negotiations were had for a settlement, which resulted in the complainant giving to Mr. Thompson a quitclaim deed to the Romeo property and to all property owned by the grandfather of complainant, and her signing a contract relinquishing all claims to his estate and settling the litigation. This bill of complaint is filed to obtain a cancellation of this deed and contract, and to establish complainant's right to a share in her grandfather's estate.

The trial judge filed a written opinion, from which we quote as follows:

"The ground upon which decree is asked is the claim that fraud was practiced upon complainant by the defendants Thompson, and their solicitor Hosner, in securing the said deed and contract from her, and the fact that she so settled the matters named in the contract while ignorant of her rights in the property involved and was ignorant of its extent and value. * * * One of the chief reasons upon which fraud is based is the claim that, when complainant executed the deed and contract in question, she was ignorant of the fact that she might, as a result of the litigation settled, obtain a one-third share of her grandfather's estate, and that she was ignorant of the extent and true value thereof. It is my conclusion that an extended finding upon the issues thus raised is unnecessary. Complainant's claim that she was ignorant of her rights in the estate and of the value and extent thereof is not supported by the proofs. The proofs show that she was fully advised by her solicitor, Mr. Canfield, as to her rights upon settlement, and he repeatedly advised her as to care and caution in the settlement of these rights, as well as to the extent of her claim. The correspondence between complainant and Starkweather shows that she was again fully advised as to her rights, and also as to the amount of

the property involved. All of this information was given complainant long before she executed the deed and contract of settlement which she now seeks to set aside. At the time of settlement the former suit was undetermined, and there was nothing to indicate whether her claims to this property, as set forth in her cross-bill, filed in the former suit would be sustained. Her mortgage given on part of the property involved to Chamberlain for $500 was assumed by Thompson. He also assumed the payment of the costs of litigation and the payment of her solicitors and the sum of $200 in addition, a total of $400. In view of the pendency of this unsettled litigation, the payments made by Thompson by way of settlement, and the information she received from her solicitors as to the matter of settlement and the extent of the property, it cannot be said that either actual fraud was practiced upon complainant by the Thompsons or Hosner, or any of them, nor was there constructive fraud on account of a discrepancy between the actual value of the property and the amount she received therefor. Complainant was competent to understand, and did understand, the nature of the transactions involved and is bound by the settlement openly entered into by and between her and the defendants herein."

The case is brought here by appeal.

It is urged with much earnestness that the decree is wrong, that facts were withheld from complainant, and that she did not know that her grandfather left any estate except the real estate which it was attempted to deed to her. She and her husband so testify. The oral proof offered by the defendants contradicts most emphatically that offered on the part of the complainant. The oral proof taken as an entirety is an illustration of how unreliable the human memory is when affected by self interest. There was an interview in Detroit to talk over a settlement at which the attorneys for the respective parties were present. The complainant was accompanied by her husband. At this time she was upwards of 25 years old. She had received letters from which we make excerpts:

"Mt. Clemens, Mich., August 28, '05.
"Harriette Van Syckle,
      "Battle Creek, Michigan.
*"Dear Madam:*
      "We are after Willie Thompson good and hard. Mr. Canfield and Mr. Erskine and I went over all the probate records and record in register's office and I can say to you confidentially that if the deed is set aside which they swear is worth $1,800, we shall claim you was left out of the will and by this error in homestead deed or faulty delivery, we ask for the original $1,500 again we also shall offer that you are entitled to one-third of the estate of $7,000, $2,333.33 and interest on this sum from 1890 over 15 years. We will ask him to contribute all as he purchased all other rights and interest under the will and he is the surety on the bond of Wm. L. Dicken, the executor. * * *
                  "I am respectfully,
                        "J. L. Starkweather."

"[Letter head of J. L. Starkweather, Attorney, Romeo, Michigan.]
                        "October 26, 1905.
"Mrs. Harriette B. Van Syckle,
            "Battle Creek, Michigan.
*"Dear Madam:*
      "I received your letter some few weeks ago. I was in hopes to be able when I answered your letter to name a day when your case would be tried. I was at Mt. Clemens on Monday and Mr. Erskine informed me that Judge Knight had not filed any answer to our cross-bill. I was in Detroit yesterday and saw Mr. Canfield and he is quite anxious to take the matter up. I learned that the Judge and most of the attorneys are away hunting. I have made two trips to Ann Arbor to see Wm. L. Dicken but so far have not been able to find him at home. I wished your uncle would run down and see him at Ann Arbor or accidentally call upon Will Thompson, the complainant and ascertain if he is willing and ready to turn over the $3,000 of Joel Thompson's estate. I am of the impression that he will send a messenger to settle with you personally rather than go on with this suit. * * *"

"[Letter head of J. L. Starkweather, Attorney, Romeo, Mich.]

"ROMEO, MICHIGAN,
"November 3d, 1910.

"MRS. HARRIET BRISTOL, now VAN SYCKLE,
    "261 East Van Buren Street,
            "Battle Creek, Mich.

"*Dear Madam:*

"I have just received your letter of Nov. 1st, and I have made a copy of the same and sent to Hon. F. H. Canfield at Detroit, and requested him to write to you at once what he thought best to do. I would say that it woud be a proper thing for a settlement to be made in the matter either in court or at Mr. Canfield's office at Detroit. If settled in court and the deed should be set aside, you then would have one-third of Joel Thompson's estate, which would be between $2,500 to $3,000. When they understand that they have got to pay this money, if their own bill is granted, they will come to a settlement that we may name.    *    *    *"

This letter was signed by Mr. Starkweather.

The complainant says she was warned against Mr. Starkweather by the defendants; they stating he was dishonest and unreliable, and for that reason placed no reliance upon his statements. We now quote another letter:

"November 22d, 1905.

"MRS. HARRIETT VAN SYCKLE,
    "261 East Van Buren Street,
        "Battle Creek, Michigan.

"*Dear Madame:*

"I have yours of the 21st inst., with copy of Mrs. Thompson's letter. I think the true reason why your uncle makes an offer of settlement is that he is afraid of the result of the case if it is tried, and that he has probably been advised by his counsel that his title to the property in Romeo is very doubtful. The indications to me are that they fear that the court will sustain your claim.

"You will recall that I said to you when you were in my office some time ago that if the court should decide that your deed to the Romeo property was not valid,

it would open the door for you to claim the share in all the property which your grandfather left, which your mother would have been entitled to if she were now living. I based my opinion upon the statute of the State, which provides that where a child or grandchild would be entitled to an equal proportion of the property with the other heirs.

"I always favor the settlement of matters of this kind, upon proper and just grounds. I do not think that the offer which your uncle has made you is a proper offer, and I do not think it ought to be accepted. I think it would be much better for him and for you if he really wants to make a just settlement, to meet at my office where the whole matter can be talked over and fairly considered. If this is done, there ought not to be much trouble in arriving at a just settlement. You ought not to consent to negotiate with him, unless Mr. Erskine or myself, or both of us are present, and I think you should write your uncle to that effect.

"Yours truly,
"F. H. CANFIELD."

An interview was had in Detroit, but no settlement was reached. Later the defendants went to Battle Creek with their attorney, and were accompanied by the complainant and her husband to the office of a lawyer at Battle Creek. There is the widest conflict in the testimony as to what occurred. A settlement was discussed, but none was reached. Later a second visit was made to Battle Creek, where a settlement was discussed. Finally the quitclaim deed and contract which are the subject of this controversy were made. In the deed the property is described as follows:

"Forever all that certain pieces or parcels of land, situated in the village of Romeo, in Macomb county, and State of Michigan, known and described as follows: Lots seven and eight of Tillson's and Harthung's addition to the village of Romeo, Macomb county, Michigan, and also the following described property situated and being in the township of Ray, Macomb county, Michigan, known and identified as the lands owned by Joel Thompson, deceased, at the time

of his death and located in sections 8 and 9 in said township of Ray, Macomb county, Mich., and left by will executed by said Joel Thompson, on the 13th day of June one thousand eight hundred eighty eight, to said Willie Thompson."

The written contract contains the following language:

"Whereas suit has been started and is now pending by said *Willie Thompson* vs. *Hattie Van Syckle, et al.,* to quiet title of said Willie Thompson to property in the village of Romeo known as lots seven and eight of Tillson's and Harthung's addition to the village of Romeo, Michigan, and, whereas the said Hattie Van Syckle in said suit makes claim to an interest in property above described and also makes claim as an heir at law of Joel Thompson deceased, to an interest in his estate: Now, therefore, for the purpose of disposing of the suit now pending in the Macomb county circuit court as above mentioned, so far as the said Hattie Van Syckle is concerned, and for the purpose of releasing her said interest in lots seven and eight of Tillson's and Harthung's addition to the village of Romeo, Michigan, and for the purpose of releasing any and every claim she may have at the present time or might have at some future time to any part or portion of the estate of Joel Thompson, deceased, she, the said Hattie Van Syckle, for and in consideration of the sum of four hundred dollars ($400.00) releases, assigns and turns over to the said Willie Thompson any and all right, title and interest she may now have or might have at some future time in and to the estate of the said Joel Thompson, deceased."

This deed and contract were drawn by the attorney of the complainant, and she says both were read to her, but that she did not understand them. We are not surprised, in view of what we have quoted from the letters and deed and contract, that the trial judge reached the conclusion he did.

The decree is affirmed.

STEERE, C. J., and MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.